**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.                                                        No. 06-4630

DAMIEN TROY MOULDEN,
          *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert E. Payne, District Judge.
(3:01-cr-00210-REP-2)

Argued: February 2, 2007

Decided: March 7, 2007

Before WILKINSON, MOTZ, and TRAXLER, Circuit Judges.

Affirmed by published opinion. Judge Motz wrote the opinion, in
which Judge Wilkinson and Judge Traxler joined.

## COUNSEL

**ARGUED:** Mary Elizabeth Maguire, Assistant Federal Public
Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Rich-
mond, Virginia, for Appellant. Sara Elizabeth Flannery, Assistant
United States Attorney, OFFICE OF THE UNITED STATES
ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:**
Michael S. Nachmanoff, Acting Federal Public Defender, Alexandria,
Virginia, for Appellant. Chuck Rosenberg, United States Attorney,
Alexandria, Virginia, for Appellee.

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

Damien Troy Moulden appeals an 18-month sentence, imposed following the revocation of his probation. We affirm.

I.

In November 2001, Moulden pleaded guilty to one count of conspiracy to commit bank fraud and pass counterfeit checks. *See* 18 U.S.C. §§ 371, 513(a), 1344 (2000). At that time, the court sentenced Moulden to three years' probation and ordered him to pay $31,625.80 in restitution. Moulden's probation carried with it a number of standard conditions, such as a requirement that Moulden not commit any crime, as well as special conditions — including periodic drug testing, participation in a substance abuse program, six months of home detention, and regular restitution payments.

In March 2004, Moulden tested positive for marijuana use, but the district court signed a "No Action Violation Report." Eight months later, in November 2004, Moulden again tested positive for marijuana, and failed to make his monthly restitution payments, but the court still did not revoke his probation. However, with Moulden's consent, the court extended the supervision period by two years.

Nevertheless, Moulden continued to violate the conditions of his probation. In April 2006, Moulden's probation officer submitted to the court a Petition on Probation, to which an Addendum was added in May, alleging that Moulden had violated numerous conditions of his probation, ultimately including: failure to satisfactorily participate in a drug treatment program, use of marijuana, commission of "law violations," failure to pay restitution as directed, failure to submit monthly supervision reports as directed, and failure to report an arrest or questioning by law enforcement to the probation officer within 72 hours of contact. In response, the district court issued a summons, directing Moulden to show cause why the court should not revoke his probation.

On May 12, Moulden failed to appear in response to that summons. The court then issued a bench warrant for his arrest. Moulden self-surrendered on May 22, and on June 8, 2006, the court held a hearing on the violations. At this hearing, Moulden pleaded guilty to the violations in the Petition and Addendum.[1] Under the gradation scheme of violations provided in the United States Sentencing Commission Guidelines Manual, each of the admitted violations is a "Grade C" violation — the lowest of the three grades of violation. *See* U.S.S.G. § 7B1.1 (2005).

After the court accepted Moulden's guilty pleas, it heard testimony from Moulden, his mother, and his probation officer prior to imposing sentence. Relevant testimony focused on the extent to which Moulden had paid restitution, whether Moulden had been gainfully employed as required by the conditions of his probation, and the extent to which Moulden had made other positive strides in his life, including mentoring high school students and ceasing his marijuana use. The Government introduced testimony from Moulden's probation officer suggesting that Moulden had "absconded from probation," and disputing Moulden's suggestion that he had met his restitution obligations. The court credited the probation officer's testimony. Although defense counsel attempted to characterize Moulden's violations as "technical," the district court disagreed, finding that the violations were "serious," notwithstanding the fact that they were "only" grade C violations.

---

[1]We do note one irregularity. The record indicates that Moulden never admitted to the allegation that he committed "law violations" (e.g., driving on a suspended registration). Although we cannot be certain, it appears that his failure to admit to this lone charge was due to inadvertence and not to any contest of the allegation. On appeal, Moulden does not argue that the district court erroneously relied on this particular allegation in fashioning the revocation sentence; an examination of the record reveals no evidence that the court did so. Nor does Moulden raise any other claim of error assertedly arising from the court's failure to ask for a separate admission on this allegation. Indeed, Moulden's brief erroneously states that he, in fact, admitted to this alleged violation. *See* Brief of Appellant at 3, 4. Therefore, Moulden has waived any claim of error arising from this issue. *See United States v. Dove*, 247 F.3d 152, 156 n.4 (4th Cir. 2001) (noting issues not argued by the parties are waived).

The policy statements contained in Chapter 7 of the Guidelines Manual call for three to nine months of imprisonment for commission of a grade C probation violation by a person with Moulden's criminal history category (I). *See* U.S.S.G. § 7B1.4. The court noted this range, but stated that it was "inadequate to address the proper punishment necessary here." The district court instead imposed an 18-month sentence, explaining that Moulden had "flaunted the rules of the court" and "flaunted the requirements of probation." Addressing Moulden directly, the court further explained that Moulden had been "given a break, a substantial break," but that Moulden "acted as if [he] had no responsibility to perform under probation." The sentence imposed was required, in the court's view, to teach Moulden that he "cannot behave in a way that [he] did and that [he is] obligated to perform in accord with the rules of society and the Court."

Moulden timely appealed, arguing that the sentence imposed is *unreasonable* and should be vacated on that basis. The Government contends, in opposition, that a revocation sentence like Moulden's should be vacated only if *plainly unreasonable*, but that the sentence is appropriate under either standard. We first address the appropriate standard of review, and then the merits of Moulden's claim.

II.

In reviewing a sentence imposed after the revocation of a defendant's *supervised release*, we recently held, in *United States v. Crudup*, 461 F.3d 433, 437 (4th Cir. 2006), that "revocation sentences should be reviewed to determine whether they are 'plainly unreasonable' with regard to [applicable 18 U.S.C.] § 3553(a) factors." Notwithstanding our recent decision in *Crudup*, Moulden argues that revocation sentences stemming from revocation of *probation* should be evaluated under a "reasonableness" standard. Because we can find no compelling reason to treat *probation* revocation sentences differently than *supervised release* revocation sentences, and many persuasive reasons to treat them alike, we reject Moulden's approach.

Our decision to review both species of revocation sentences under the same standard accords with 18 U.S.C.A. § 3742(a)(4) (West 2005), the relevant Sentencing Commission policy statements and commentary, and our historical treatment of revocation sentences.

First, § 3742(a)(4) governs *both* sentences for revocation of probation and those imposed for revocation of supervised release. That statute provides that a defendant convicted of an "offense for which there is no sentencing guideline" may appeal the resultant sentence if it is "plainly unreasonable." 18 U.S.C. § 3742(a)(4).[2] There are no sentencing guidelines for violations of probation or supervised release. Although Chapter 7 of the Guidelines includes a revocation table suggesting appropriate terms of imprisonment for each grade of violation at each criminal history category, the table itself is a "policy statement" and not a "guideline." *See* U.S.S.G. § 7B1.4. Indeed, violations of probation and supervised release are addressed in "a single set of policy statements." *See* U.S.S.G., ch. 7, pt. A, introductory cmt. 4 (2005). The Commission selected this approach in order to give courts "greater flexibility" in imposing a sentence for probation *and* supervised release violations than a guideline would allow. U.S.S.G., ch. 7, pt. A, introductory cmts. 1, 3(a).

Moreover, a closer look at the contents of Chapter 7 of the Guidelines further suggests that revocation sentences of both kinds should be treated similarly. The Guidelines Manual states that it views "violations of the conditions of probation and supervised release as functionally equivalent." U.S.S.G. ch. 7, pt. B, introductory cmt. The Commission instructs that both species of revocation sentences should aim to "sanction the violator for failing to abide by the conditions of the court-ordered supervision," and to punish the inherent "breach of trust" indicated by the defendant's behavior, rather than punish the defendant for additional criminal behavior (to the extent that the violating behavior is criminal). U.S.S.G., ch. 7, pt. A, cmt. 3(b). As a result, a similarly classified violation of either type of supervision is subject to the same revocation table and the same policy statement range. *See* U.S.S.G. § 7B1.4. Furthermore, in previously discussing the unitary treatment of both types of revocation sentences by the policy statements of Chapter 7, we have noted that "there is no reason in policy or principle to distinguish between probation revocation and supervised release revocation." *United States v. Davis*, 53 F.3d 638, 640 (4th Cir. 1995).

---

[2]Although, in *United States v. Booker*, 543 U.S. 220, 245 (2005), the Supreme Court excised § 3742(e), it left undisturbed § 3742(a)(4).

Nevertheless, Moulden urges that, because a court imposing a sentence upon revoking a defendant's probation must consider all § 3553(a) factors, *see* 18 U.S.C.A. § 3565(a) (West 2005) — rather than just some of those factors, as is the case when revoking supervised release, *see* 18 U.S.C.A. § 3583(c) (West 2005) — a probation revocation sentence is indistinguishable from the usual guidelines sentence for the purposes of our review. We disagree. Probation revocation sentences, although they do require consideration of all of the § 3553(a) factors, are not true "guidelines" sentences. Even under the mandatory guidelines regime that predated *Booker*, such sentences were left to the discretion of the court and the policy statement ranges were treated as non-mandatory. *See United States v. Denard*, 24 F.3d 599, 602 (4th Cir. 1994). Historically, we have viewed such sentences as different, in kind, from a sentence imposed after a criminal conviction and have accorded the district court's determination of the appropriate sentence greater deference. *See id.*

Finally, we note that none of our sister circuits has varied the standard of review applicable to the two kinds of revocation sentences. To be sure, these courts do not necessarily agree with us as to the appropriate standard of review. *See United States v. Miqbel*, 444 F.3d 1173, 1176 & n.5 (9th Cir. 2006) (adopting a "reasonableness" standard of review for revocation sentences); *United States v. Tyson*, 413 F.3d 824, 825 (8th Cir. 2005) (same); *United States v. Contreras-Martinez*, 409 F.3d 1236, 1241 & n.2 (10th Cir. 2005) (noting that its pre-*Booker* "reasoned and reasonable" standard of review for revocation sentences is consistent with the "reasonableness" review required by *Booker*); *United States v. Fleming*, 397 F.3d 95, 99 (2d Cir. 2005) (adopting a "reasonableness" standard of review for all non-guidelines sentences, including revocation sentences); *see also United States v. Johnson*, 403 F.3d 813, 817 (6th Cir. 2005) (declining to decide the applicable standard of review for revocation sentences); *United States v. Dees*, 467 F.3d 847, 852 (3d Cir. 2006) (same). But none of them has even suggested that the standard of review should differ depending on whether the revocation involves probation or supervised release.

Because there is no persuasive reason to review sentences imposed pursuant to probation revocation differently than those imposed pursuant to supervised release revocation, we hold, in light of *Crudup*,

that we review probation revocation sentences, like supervised release revocation sentences, to determine if they are plainly unreasonable.

III.

In determining whether a revocation sentence is "plainly unreasonable," *Crudup* directs that we must first determine whether the sentence is unreasonable. 461 F.3d at 438. This initial inquiry takes a more "deferential appellate posture concerning issues of fact and the exercise of discretion" than reasonableness review for guidelines sentences. *Id.* at 439 (citations omitted). Of course, as always, the sentencing court must consider the policy statements contained in Chapter 7, including the policy statement range, as "helpful assistance," and must also consider the applicable § 3553(a) factors. *Id.* (citations omitted). At the same time, however, the sentencing court retains broad discretion to revoke a defendant's probation and impose a term of imprisonment up to the statutory maximum. *Id.* The court must provide a statement of reasons for the sentence imposed, as with the typical sentencing procedure, but this statement "need not be as specific as has been required" for departing from a traditional guidelines range. *Id.* Only if this modified "reasonableness" analysis leads us to conclude that the sentence was unreasonable, do we ask whether it is "plainly" so, "relying on the definition of 'plain' [used] in our 'plain' error analysis" — that is, "clear" or "obvious." *Id.* (citations omitted).

In addressing the particular merits of Moulden's appeal, an examination of the holding in *Crudup* itself is instructive. In that case, the district court sentenced the defendant to 36 months' imprisonment on revocation of his supervised release, although the relevant policy statement called for a range of five to eleven months. *Crudup*, 461 F.3d at 435. We held, nevertheless, that the sentence was reasonable. *Id.* at 440. Procedurally, the district court had considered the advisory policy statement range and Crudup failed to identify any § 3553(a) factor that was not considered by the court. *Id.* Substantively, the court had noted that Crudup had an admitted pattern of violating the conditions of his supervised release — despite a number of opportunities to take advantage of the leniency of the court. *Id.*

Moulden's infractions were more numerous than Crudup's, and arguably more serious. The district court ultimately revoked Crudup's

supervised release because he repeatedly failed to take required drug tests, used illicit drugs, and quit his job. *Crudup*, 461 F.3d at 435. Moulden, by contrast, "absconded" from probation (by failing to complete the required reports and keep the required contact with his probation officer), used illicit drugs, failed to complete a required drug treatment program, failed to pay restitution as required by the court, and failed to report contact with law enforcement officers as was required. The sentencing court noted, with dismay, each of these violations. The court's statement of reasons is replete with evidence that it viewed Moulden's behavior as evidence of repeated and serious breaches of trust — the type of breaches that are explicitly contemplated as the reasons for imposing a revocation sentence. *See* U.S.S.G., ch. 7, pt. A, cmt. 3(b).

Moulden contends that the district court insufficiently analyzed the § 3553(a) factors and therefore erred procedurally in imposing Moulden's sentence. We disagree. We have repeatedly said post-*Booker* that a court need not "robotically tick through § 3553(a)'s every subsection." *United States v. Johnson*, 445 F.3d 339, 345 (4th Cir. 2006); *see also United States v. Montes-Pineda*, 445 F.3d 375, 380 (4th Cir. 2006). A court must, however, provide a sufficient explanation so that we may effectively review the reasonableness of the sentence. *Montes-Pineda*, 445 F.3d at 380. That explanation should also provide us an assurance that the sentencing court considered the § 3553(a) factors with regard to the particular defendant before him, and also considered any potentially meritorious arguments raised by the parties with regard to sentencing. *Id.*

In this case, the district court made explicit the reasons for its departure from the Chapter 7 policy statement range. These reasons included: Moulden's repeated decisions not to comply with the conditions set by the court, Moulden's need to learn to act under the rules of society and the court, his "flaunt[ing]" of the rules and requirements of probation, and the need for Moulden to learn and rehabilitate himself after a series of "serious" probation violations. Even if not couched in the precise language of § 3553(a), each of these reasons can be matched to a factor appropriate for consideration under that statute and was clearly tied to Moulden's particular situation. Moulden advanced before the district court the same arguments he has made on appeal — primarily that, apart from some minor missteps,

Moulden had made positive advancements towards successful reha-
bilitation — and the district court considered all of these arguments
prior to selection of a sentence. In short, the district court articulated
clear and appropriate reasons under § 3553(a).

Finally, Moulden challenges the substantive reasonableness of his
sentence. The sentence imposed was substantial in light of the three
to nine month range suggested by the policy statements. However,
Moulden's violations, while all grade C violations, were numerous
and pervasive. As the district court noted, Moulden had not made the
required restitution payments, had not completed the required drug
treatment program, had repeatedly tested positive for marijuana, and
had failed to submit required reports to his probation officer. It is
appropriate for a court, in facing a repeat probation violator, to take
account of the fact that the policy statement range is based only upon
the severity of the single most severe violation. *See Crudup*, 461 F.3d
at 440. Put another way, had Moulden committed only one Grade C
violation of probation, instead of the pattern of repeated violations to
which he pleaded guilty, the three to nine month range suggested by
the policy statements would have been the same. We cannot, and will
not, hold that it is unreasonable for a sentencing court to take account
not only of the severity of the violations, but also their number, in
fashioning a revocation sentence.

In sum, in light of Moulden's pattern of refusing to conform to the
requirements of probation, the considered, reasoned explanation given
by the district court for imposing a sentence above the policy state-
ment range, and the structure and standard of our review of revocation
sentences, we simply cannot agree with Moulden's contention that his
sentence was unreasonable. As we find that Moulden's sentence was
not unreasonable, we certainly cannot conclude that it is plainly so.

IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.