**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-4817**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

THEODUS WILLIAMS,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, District Judge. (5:96-cr-00109-BO-2)

Argued: September 24, 2010          Decided: November 12, 2010

Before NIEMEYER, MOTZ, and GREGORY, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Stephen Clayton Gordon, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. Jennifer P. May-Parker, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Thomas P. McNamara, Federal Public Defender, Raleigh, North Carolina, for Appellant. George E. B. Holding, United States Attorney, Anne M. Hayes, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Theodus Williams appeals a twenty-four month sentence for violating the terms of his supervised release. Williams argues that his sentence is plainly unreasonable and that the district court erred when, rather than relying on 18 U.S.C. § 3553 factors, it made an unfounded statement about who Williams likely associated with in the past. For the reasons that follow, we must affirm Williams' sentence.

In 1996, Williams was convicted of being a felon in possession of a firearm under 18 U.S.C. § 922(g) and aiding and abetting. He was sentenced to a 120 month prison term followed by thirty-six months of supervised release. On February 22, 2008, Williams was released from prison and began his supervised release. More than a year later, on March 13, 2009, the district court continued Williams on supervision after he received traffic violations for driving with a revoked license and having tinted windows.

On June 9, 2009, Williams tested positive for cocaine use and admitted that he had used the drug three days earlier. Based on this test and his earlier traffic violations, Williams' probation officer petitioned the district court for modifications to the terms of his supervision. Nine days later, on June 18, the court granted the petition. Williams was ordered to spend two days in prison and to enroll in the

2

Surprise Urinalysis Program for an additional ninety days. Williams was also ordered to participate in the Drug Reduction on Probation and Supervised Release ("DROPS") program. Once enrolled in the DROPS program, an individual on supervised release can be incrementally imprisoned, beginning with two days after the first positive test for drug use, five days after the second use, ten days after the third use, and so on. Under the terms of the DROPS program, the total term of imprisonment for drug use cannot exceed thirty days. Williams began at the first level of use.

Less than a month later, on July 9, 2009, Williams' probation officer petitioned the court to revoke supervised release. In addition to the infractions contained in the June 18 petition, this second petition listed three new violations: (1) criminal conduct, for Williams' felony charge of possession of cocaine then before the North Carolina, Vance County District Court; (2) possessing a controlled substance; and (3) using a controlled substance because, on July 2, Williams admitted to his probation officer that he had used cocaine several times in the last month. All three violations stemmed from a single June 19, 2009 incident where Williams was arrested by local police for possessing a vial containing cocaine residue. The district court issued a warrant for Williams' arrest.

3

At the July 29, 2009, revocation hearing before the district court, Williams admitted to violations (2) and (3), and did not contest violation (1). Williams also apologized for his conduct, and stated that he was ready for "[w]hatever consequence I've got to face, I'm ready to own up to it." The government then informed the court of Williams' "really bad record," involving drugs and the shooting of at least two people. After informing the court of the statutory guidelines range, twenty-one to twenty-four months, the government asked for the maximum. The court then asked defense counsel if there was "Anything else?" Defense counsel responded that Williams had been arrested with only a small canister holding cocaine residue for personal use, had been working, was thirty-nine years old, and was living in Henderson.

The court interrupted defense counsel to observe that Williams was "born and raised in Henderson, and he has a record . . . in Henderson that goes back over twenty years." The hearing then continued:

> The Court: [Y]ou've been around here with me over the past couple of decades and you've got the crowds from the '80s and the '90s and the 2000s, all from Henderson. I mean, he probably hung out with the Lance Morrison crowd and the old – Hickmans and all those people. I mean, but he's spent ten years in jail so he missed some of it. But, I mean, you're 39, you're going to be 40 years old.
>
> Defendant: Yeah, I just turned 39 yesterday, sir.

4

The Court: Yeah. Okay. You're 39. Anyway, I'll give him the 24 months.

The court then entered a judgment against Williams, but said nothing further about the sentence.

The court's statements about Williams' possible past associations with Lance Morrison and the "Hickmans" in Henderson, North Carolina were groundless. The comments did not appear to be based on any facts in the record or any evidence presented by the parties. Nor were they relevant to the court's obligations under 18 U.S.C. § 3583(e), which required it to assess Williams' revocation sentence using the section 3553 factors.

Nonetheless, neither Williams nor his counsel requested a sentence within the guidelines range, sought a sentence that departed from the guidelines range, or even mentioned his court-ordered enrollment in the DROPS program.

"[R]evocation sentences should be reviewed to determine whether they are 'plainly unreasonable' with regard to those § 3553(a) factors applicable to supervised release revocation sentences." United States v. Crudup, 461 F.3d 433, 437 (4th Cir. 2006). However, where, as here, the defendant fails to reserve an objection to a sentence by "sufficiently alert[ing] the district court of its responsibility to render an individualized explanation" pursuant to the § 3553 factors, we

apply the more rigorous plain error standard of review. United States v. Lynn, 592 F.3d 572, 577-80 (4th Cir. 2010).

The plain error standard of review is a demanding one. The defendant must identify an error, demonstrate that the error was plain, and show that it affected his substantial rights. United States v. Olano, 507 U.S. 725, 732 (1993). And, even when we do detect a plain error, we must refrain from reversing the district court unless the error will "seriously affect[] the fairness, integrity or public reputation of judicial proceedings." Id. (citations omitted).

It is clear that the district court committed an error in failing to consider the section 3553 factors. While the district court has broad discretion to impose a particular sentence, "[a] district court commits a significant procedural error where it 'fail[s] to adequately explain the chosen sentence.'" United States v. Thompson, 595 F.3d 544, 547 (4th Cir. 2010) (quoting Gall v. United States, 552 U.S. 38, 51 (2007)). "This requirement applies '[r]egardless of whether the district court imposes an above, below, or within-Guidelines sentence.'" Id. (quoting United States v. Carter, 564 F.3d 325, 330 (4th Cir. 2009)). Though "[a] court need not be as detailed or specific when imposing a revocation sentence," Thompson, 595 F.3d at 547, here, the district court provided no valid basis for its sentence. Instead, it simply came to the conclusion,

6

without any evidence, that Williams "probably hung out with" particular people over the years. The court's speculative comments fall far short of its obligations under 18 U.S.C. § 3583(e), which required the court to make an individualized assessment of Williams using the section 3553 factors before revoking his supervised release.

The error was also "plain" in so far as it violated established law. "An error is plain 'where the law at the time of trial was settled and clearly contrary to the law at the time of appeal.'" United States v. Hughes, 401 F.3d 540, 547 (4th Cir. 2005) (quoting Johnson v. United States, 520 U.S. 461, 468 (1997)).

> It is indeed true that the law as it relates to federal sentencing is in a state of flux . . . . We are certain, though, that the district court's obligation to provide some basis for appellate review when imposing a revocation sentence, however minimal that basis may be, has been settled in this Circuit since at least United States v. Moulden, 478 F.3d 652, 657 (4th Cir. 2007). Given how clearly settled this requirement is, even as it applies to revocation sentences, the district court's failure to provide any reasons for its sentence contravened clear circuit precedent . . . .

Thompson, 595 F.3d at 547-48 (noting that the analysis of "plain" in "plain error" is the same as that of "plainly" in "plainly unreasonable"). Thus, the district court had adequate notice that this form of cursory sentencing was improper.

7

Finally, having established that the district court committed an error and that it was plain, this Court must determine whether the error also implicated Williams' "substantial rights." Olano, 507 U.S. at 732. An error affects substantial rights if it was prejudicial or affected the outcome of a case. Hughes, 401 F.3d at 548. The burden to prove that the error was prejudicial falls on the defendant, Williams. Id.

Williams alleges that the dubious comments of the district court were prejudicial. Yet, at the revocation hearing, neither Williams nor his counsel made any arguments about the sufficiency of the court's findings or requested an alternative sentence. The court provided Williams and his counsel with opportunities to speak prior to the imposition of the sentence. In response, Williams stated his intention to accept "[w]hatever consequence I've got to face, I'm ready to own up to it." Defense counsel also did not request a within or below guidelines sentence or even mention the section 3553 factors. Worse, counsel utterly failed to refer to Williams' involvement in the DROPS program. Under the terms of that program, Williams' second drug use violation would have led to only five days in prison, rather than twenty-four months. Thereafter, the court sentenced Williams to twenty-four months of imprisonment, a within guidelines sentence and the only sentence proposed by either side at the hearing. See United States v. Montes-Pineda,

8

445 F.3d 375, 379 (4th Cir. 2006) ("[A] sentence within a properly calculated advisory Guidelines range is presumptively reasonable."). At the end of the hearing, following both the court's unfounded statements and the sentencing, defense counsel again failed to raise an objection. Counsel merely closed by thanking the court.

The unsubstantiated comments of the district court were unfortunate and make this case somewhat troubling. Nevertheless, in light of Williams' own seeming willingness to accept any sentence, defense counsel's failure to ask for an alternative sentence, the government's unrebutted discussion of Williams' violent criminal history and the court having provided Williams with a within guidelines sentence, it would be far too speculative for us to find that the district court's comments prejudicially affected Williams' sentencing. See Lynn, 592 F.3d at 580.

Although we do find that the district court plainly erred, Williams' inability to show that the court's error affected his substantial rights is fatal to his appeal. Therefore, we must

AFFIRM.

9