**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 10-4267

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

TIMOTHY ROMERO BENTON,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Raymond A. Jackson, District Judge. (2:98-cr-00036-RBS-1)

Argued: May 13, 2011                    Decided:   June 16, 2011

Before TRAXLER, Chief Judge, and SHEDD and DUNCAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Frances H. Pratt, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Darryl James Mitchell, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee. **ON BRIEF:** Michael S. Nachmanoff, Federal Public Defender, Rodolfo Cejas II, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Neil H. MacBride, United States Attorney, Alexandria, Virginia, Emily Sowell, Third-Year Law Student, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

The district court determined that Timothy Romero Benton violated the conditions of his supervised release, and the court sentenced Benton to 36 months' imprisonment, the maximum sentence available for the Grade-C violations committed by Benton. Benton appeals, challenging the procedural and substantive reasonableness of the sentence. We affirm.

I.

Benton was released by the Federal Bureau of Prisons on January 15, 2010, after serving a 147-month sentence for armed bank robbery. Benton met with his probation officer for the first time on January 19, 2010. At that meeting, the officer instructed Benton to report back to the probation office the next day and then to a substance abuse treatment center for an initial assessment. Benton called the probation officer the next day to say that he would not be reporting to the probation office or to the substance abuse center. Benton told the officer that he refused to abide by the conditions of his supervised release and asked the officer to return him to court for sentencing. Benton did return to the probation office on January 21, 2010, and he again stated that he would not abide by the conditions of supervised release and asked to be returned to court for sentencing. The probation officer thereafter filed a

3

petition on supervised release, alleging two violations -- failure to participate in a treatment program and failure to report to the probation officer.

At the revocation hearing, the probation officer testified that during their first meeting, Benton "didn't seem to understand why he was on supervised release," and that Benton believed "he had already done his time and he shouldn't have to be doing any more time." J.A. 34. According to the probation officer, Benton was "adamant" in his refusal to abide by the conditions of supervised release. J.A. 35.

Benton's testimony at the hearing reflected his disdain for the concept of supervised release and the specific conditions imposed on him. Benton stated that since he had not been charged with any drug crimes, he should not have been ordered to undergo a substance abuse assessment, and that he thus had "no intentions" of reporting to the treatment center as ordered by his probation officer. J.A. 41. He stated that he "d[id]n't trust the system" and he told the officer that he refused to comply with the conditions because he wanted to challenge the "legality of supervised release." J.A. 42. When asked by his attorney if he intended to comply with the terms of supervised release, Benton stated he would comply "within reason," if his probation officer would work with him. J.A. 42. The district court then asked Benton if he intended to comply with the

4

conditions of supervised release, and Benton reaffirmed his position, stating that "I intend to follow it within reason." J.A. 46. Benton also indicated that since he had served his time, he should not be required to pay restitution, but stated that "[i]f they work with me, then I will work . . . . I have rights." J.A. 49. Benton claimed that he had "no problem with the law. I love the law, if it's done right." J.A. 50.

The government argued that Benton's statements to his probation officer and at the hearing demonstrated that Benton had no respect for the court and that "[t]here is absolutely no prospect that this defendant will ever be a compliant supervisee." J.A. 51-52. The government therefore asked the district court to terminate supervised release and impose the maximum sentence available. Counsel for Benton contended that while Benton believed that supervised release in general was illegal, Benton said that he would comply with the conditions. Counsel made no argument about what sentence would be appropriate for Benton, nor did counsel raise any objection to the sentence sought by the government.

After considering the parties' arguments, the district court stated that it had considered imposing the statutory maximum sentence, but that it was giving Benton the benefit of the doubt in light of Benton's "shaky" statements that he would comply with the conditions of supervised release. J.A. 57. The

5

court thus announced its intention to sentence Benton to six months' imprisonment, to be followed by supervised release for 54 months. The court stated that if Benton were to return to court "with the same business about what you are not going to do," the court would terminate supervised release and impose the maximum sentence. J.A. 57. The court explained:

> So we are going to start over again in six months, give you time to think about it. If you come back in here and decide you don't want to comply, that you are going to jerk the Court around, that's it. . . . The Court is certain that it is giving you a fair opportunity to succeed. I have explained it to you. There's nothing to negotiate about whether you are on supervised release or question the legality of it. There's not one ounce . . . of credence or credibility in that argument.

J.A. 58. As the court was instructing Benton to "drop that" approach, Benton interrupted to say, "I can't drop it, your Honor." J.A. 58. The court then asked, "Are you telling me that when you come back, you are coming back with the same thing again?" J.A. 58. Benton responded, "I didn't say I was coming back with the same thing, but I have an issue where it's based on my rights. My liberty is being -- I'm being deprived on my liberty." J.A. 58. The district court then changed its view and sentenced Benton to 36 months' imprisonment, because Benton was "evidencing to the Court that he does not accept supervised release [and that] [h]e does not plan to comply with the Court's directives to him." J.A. 58-59. The court explained that

6

> Upon your completion of the 36 months, you will be a free man. You won't have to do anything. You are free to go.
>
> All right. And the reason for it is the defendant has indicated he's not going to comply and he continues to . . . challenge the right of the Court to impose supervised release.

J.A. 59. Benton interjected, claiming that he did not refuse to comply with the conditions of supervised release or challenge the court's right to impose supervised release. The district court was unconvinced:

> [T]he Court has attempted to impose a sentence that's reasonable, but the defendant, through his words and his deeds, is resisting the Court's efforts to do that. He's made it clear he challenges the Court's right and his responsibility to be on supervised release. So the Court does not believe it appropriate to continue to waste the resources of this Court on someone who does not respect the system or will not comply. Therefore, the Court will give him what he's due under the law and release him.

J.A. 59-60.

## II.

Benton appeals, challenging the sentence imposed by the district court as both procedurally and substantively unreasonable.

A sentence imposed on revocation of supervised release may be reversed if it is "plainly unreasonable." 18 U.S.C. § 3742(a)(4). "In determining whether a sentence is plainly unreasonable, we must first decide whether the sentence is

7

unreasonable." United States v. Crudup, 461 F.3d 433, 438 (4th Cir. 2006). Only if this court finds the sentence unreasonable must we decide whether it is "plainly" so. See United States v. Moulden, 478 F.3d 652, 657 (4th Cir. 2007).

Reviewing the reasonableness of a revocation sentence generally involves the same considerations of procedural and substantive reasonableness employed in the review of the original sentences imposed in criminal proceedings. See Crudup, 461 F.3d at 438. In the context of supervised release, however, our review "takes a more deferential appellate posture concerning issues of fact and the exercise of discretion than reasonableness review for guidelines sentences." Moulden, 478 F.3d at 656 (internal quotation marks omitted).

Benton argues his sentence is procedurally unreasonable because the district court did not consider the sentencing range suggested in Chapter 7 of the Sentencing Guidelines or the relevant § 3553(a) factors and did not sufficiently explain the basis for imposing the maximum sentence. Because Benton made no arguments about what sentence would be appropriate and did not object after sentence was imposed, we review for plain error only. See United States v. Lynn, 592 F.3d 572, 578 (4th Cir. 2010) ("By drawing arguments from § 3553 for a sentence different than the one ultimately imposed, an aggrieved party sufficiently alerts the district court of its responsibility to

render an individualized explanation addressing those arguments, and thus preserves [his] claim."). In our view, Benton has failed to carry his burden of showing that plain error occurred.

A sentence is procedurally reasonable if the district court considered the relevant policy statements set forth in Chapter 7 of the Sentencing Guidelines and the applicable factors set out in 18 U.S.C. § 3553(a) and sufficiently explained the sentence imposed. See United States v. Thompson, 595 F.3d 544, 547 (4th Cir. 2010); Moulden, 478 F.3d at 657. Nonetheless, "[w]e have repeatedly said post-Booker that a court need not robotically tick through § 3553(a)'s every subsection." Moulden, 478 F.3d at 657 (internal quotation marks omitted). The court's explanation of its sentence must be sufficient to permit us to "effectively review the reasonableness of the sentence," id., but the explanation for a sentence exceeding that recommended by the Guidelines' policy statements need not be as specific as might be required in the context of an initial sentencing, see id. at 657; Crudup, 461 F.3d at 439.

In this case, the district court did not explicitly refer to the Guidelines' suggested sentencing range, nor did the court specifically mention the other relevant § 3553(a) factors. See 18 U.S.C. § 3583(e) (listing the § 3553(a) factors to be considered when modifying or revoking supervised release). We nonetheless believe that the record as a whole demonstrates that

9

the court in fact properly considered the advisory sentencing range and the relevant statutory factors and sufficiently explained the basis for the sentence imposed.

Preliminarily, we note that the court's initial decision to impose a sentence of six months demonstrates that the court was in fact aware of the sentencing range suggested by the Guidelines. Moreover, the factor driving the sentence in this case, as the district court made abundantly clear, was Benton's own defiant intransigence. After considering the statements Benton made to his probation officer and during the hearing, the district court concluded as a factual matter that Benton would not comply with the conditions of supervised release and that the appropriate sentence therefore was the maximum term of imprisonment and termination of supervised release. The concerns expressed by the court during the hearing were clearly related to several of the relevant § 3553(a) factors, see 18 U.S.C. § 3553(a)(1), (a)(2)(B) & (C), and reflected consideration of Benton's individual circumstances. See Moulden, 478 F.3d at 658 (finding that district court "articulated clear and appropriate reasons under § 3553(a)" where court's reasons, "[e]ven if not couched in the precise language of § 3553(a), . . . [could] be matched to a factor appropriate for consideration under that statute and [were] clearly tied to [the defendant's] particular situation").

10

Because the district court's statements during the hearing established that he considered all required factors before imposing sentence and were sufficiently detailed to permit us to review the reasonableness of the sentence imposed, we find no procedural error, plain or otherwise.

As to Benton's contention that the sentence imposed was substantively unreasonable, we again disagree. A sentence is substantively reasonable if the district court states a proper basis for its imposition of a sentence up to the statutory maximum. See Crudup, 461 F.3d at 440; see also Thompson, 595 F.3d at 548 ("For a sentence to be plainly unreasonable, . . . it must run afoul of clearly settled law."). While the court preliminarily indicated that a six-month sentence would be reasonable if Benton intended to comply with the conditions of supervised release, the district court subsequently concluded, based on Benton's continued statements to the court, that Benton in fact did not intend to comply with the conditions of supervised release. The district court's factual finding on this point is a fair reading of the many statements made by Benton to his probation officer and during the course of the hearing. Given the record-supported factual finding by the district court and our highly deferential review of revocation sentences, see Moulden, 478 F.3d at 656; Crudup, 461 F.3d at 439, we cannot conclude that the district court erred, much less

plainly erred, by imposing the maximum revocation sentence on a defendant who refuses to comply with the conditions of supervised release. The sentence is substantial, but we cannot say that it is substantively unreasonable under the circumstances of this case.

## III.

As explained above, the district court's sentence is neither procedurally nor substantively unreasonable. Because the sentence is not unreasonable, it quite clearly is not plainly unreasonable. Accordingly, we reject Benton's challenges and affirm the 36-month sentence imposed by the district court.

AFFIRMED