SHEDD, Circuit Judge,
dissenting:
Javaad Fisher’s sentence is procedurally reasonable and, even if it were not, any error is harmless. Accordingly, I respectfully dissent from the majority’s decision to vacate his sentence and remand for further proceedings.
In reviewing a sentence imposed for violating supervised release we apply the “plainly unreasonable” standard, United States v. Crudup, 461 F.3d 433, 437 (4th Cir.2006), and “take[] a more deferential appellate posture concerning issues of fact and the exercise of discretion than reasonableness review for guidelines sentences,” United States v. Moulden, 478 F.3d 652, 656 (4th Cir.2007) (internal quotation marks omitted). Relevant here, the court’s statement of reasons “ ‘need not be as specific as has been required’ for departing from a traditional guidelines range.” Id. at 657 (quoting Crudup, 461 F.3d at 439). A court is required to “place *331 on the record an ‘individualized assessment’ based on the particular facts of the case before it.” United States v. Carter, 564 F.3d 325, 330 (4th Cir.2009).
As the majority recounts, the district court gave an individualized explanation on the record at Fisher’s first revocation sentencing hearing, explaining that it would “normally” have sentenced Fisher to the statutory maximum of 60 months imprisonment but, in recognition of his drug problem, the court would give him “an opportunity” to get his “problems solved,” therefore only imposing a sentence of 6 months imprisonment. (J.A. 33). The court made clear, however, that “if that doesn’t work, if the Probation Officer brings you back in here, I won’t have any choice but to send you to jail, and for a long time.” (J.A. 34). Fisher failed to heed this advice and after his release he quickly violated his supervised release conditions. At the second revocation hearing, the Government — represented by the same Assistant U.S. Attorney (AUSA) who originally prosecuted Fisher in 2003— pressed for the statutory maximum of 54 months imprisonment,[1] explaining in detail the numerous breaks Fisher had been afforded and his failure to take advantage of the court’s repeated leniency. Fisher’s arguments in response, made by the same attorney who represented him at the first revocation hearing, were unexceptional and, in substance, no different from those at the first hearing.[2] The court then imposed a sentence of 30 months, adding “we have done all that we can do for Mr. Fisher.”
In my view, the district court provided an individualized explanation for Fisher’s sentence during his sentencing process at the first hearing. At the second hearing, the court simply implemented the sentence it had already promised — and had provided an individualized explanation for — at the first sentencing. The court’s words, that it had done all it could for Fisher, indicate that it had given him a break the first time with the promise of a significant sentence if Fisher failed to take advantage of the opportunity. I do not believe Carter requires more, particularly given the more deferential standard we employ in the supervised release context. Here, the same judge, the same AUSA, and the same criminal defense attorney were present at both hearings. In fact, Fisher’s attorney admitted at oral argument that she was not surprised that the court imposed this sentence. Therefore, I believe Fisher’s sentence is procedurally reasonable and is certainly not “plainly” unreasonable.
Even assuming the district court committed procedural error, any error is harmless. United States v. Boulware, 604 F.3d 832, 838-39 (4th Cir.2010). Under the harmless error standard, as it applies to procedural sentencing errors, “the government may avoid reversal only if it demonstrates that the error did not have a *332 substantial and injurious effect or influence on the result and we can say with fair assurance that the district court’s explicit consideration of [the defendant’s] arguments would not have affected the sentence imposed.” Id. at 838 (internal quotation marks and alterations omitted). The Government has satisfied that standard here. The same experienced district judge sentenced Fisher in 2004, reduced his sentence in 2005, and handled both revocation hearings. The judge warned Fisher at the first revocation hearing that Fisher would face significant jail time if he violated supervised release again, leaving us with “no doubt” that the court would have imposed the same sentence, particularly given that Fisher’s arguments were “very weak.” Id. at 839. Remanding this case for further proceedings is a “pointless waste of resources,” id. at 840, given that the district court will simply reenter — with an additional paragraph of explanation-the same sentence, “[a] reasonable sentence” that “we would” then “be compelled to affirm.” United States v. Savillon-Matute, 636 F.3d 119, 123 (4th Cir.2011) (internal quotation marks omitted). Clearly, the district judge handled this revocation properly, and I believe quite admirably— stating clearly what he intended to do, but giving the defendant one last chance to correct his behavior. To require the judge to simply restate his clear intention and determination under these circumstances would result in “the empty formality of an unnecessary remand.” United States v. Hargrove, 701 F.3d 156, 163 (4th Cir.2012).
For these reasons, I respectfully dissent.

. At the first hearing, the Government argued for a sentence of nine months imprisonment.

. At the first revocation hearing Fisher’s attorney focused on Fisher’s substance abuse and requested a "more intensive drug treatment program." (J.A. 31). Fisher’s attorney noted that Fisher had not had "any major issues” while on supervision and that he was trying to find a job but had been unable to do so. Fisher himself then apologized to his community and his family. At the second hearing, Fisher’s attorney argued that Fisher had committed only "technical” violations, had "consistently come to this Court and said, ‘I have a drug abuse problem,’ ” and was attempting to find a job. (J.A. 45-46). Fisher again apologized, claimed he had left his criminal life behind, and mentioned that he wanted to be there for his daughter. While the words may have changed, the substance of Fisher’s arguments was the same at both hearings.