**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-4094**

UNITED STATES OF AMERICA,

Appellee,

v.

ANDREW WALLACE,

Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Arenda L. Wright Allen, District Judge. (2:10-cr-00152-AWA-TEM)

Argued: September 23, 2016          Decided: December 5, 2016

Before DUNCAN, AGEE, and HARRIS, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED**: Patrick L. Bryant, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Andrew Curtis Bosse, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee. **ON BRIEF**: Geremy C. Kamens, Acting Federal Public Defender, Alexandria, Virginia, Richard J. Colgan, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Norfolk, Virginia, for Appellant. Dana J. Boente, United States Attorney, Alexandria, Virginia, Darryl J. Mitchell, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

After Andrew Wallace violated the terms of his supervised release, the district court revoked his release and sentenced him to the statutory maximum of sixty months' imprisonment. Wallace challenges the sentence on the grounds that it is plainly unreasonable.[1] Finding no error, we affirm.

I.

In 1992, Wallace pleaded guilty to one count of being a felon in possession of a firearm, two counts of armed robbery, and one count of carrying a firearm during a crime of violence. The district court found him to be an armed career criminal and sentenced him to 240 months in prison, with three years of supervised release. The terms of his supervised release required Wallace to maintain a steady job, notify the probation officer of any change of residence, and report any instances in which he was arrested or questioned by law enforcement. Wallace was released from prison on November 9, 2009, and his supervised release began.

On November 15, 2010, Wallace's probation officer filed a petition to revoke his supervision after Wallace was arrested and charged with two counts of sodomy by force and one count of

---

[1] On appeal, Wallace challenges only his sentence, not the revocation of his supervised release.

2

rape.  At the time of his arrest, Wallace was living in his vehicle.  A woman staying with Wallace in his vehicle accused him of the sexual assault.  Upon Wallace's arrest, a search of his vehicle yielded binoculars, heavy rope, a knit cap, gloves, and three knives, which were considered as burglary tools.  In addition to the sexual assault crimes, the revocation petition charged Wallace with possession of a dangerous weapon (that is, the knives found in his vehicle) and failure to notify his probation officer that he was unemployed.

The state court eventually dismissed the sodomy and rape charges.  In the later revocation of supervised release proceeding, the district court determined that the dismissed charges and dangerous weapon allegations were not supported by probable cause.  Because only the failure to notify of unemployment, a minor violation, remained, the district court dismissed the petition at the Government's request.

On September 10, 2012, the probation officer filed another petition to revoke Wallace's supervised release.  This petition charged Wallace with committing two new criminal offenses: indecent liberties and reckless driving.  The revocation petition alleged that while Wallace was babysitting a ten-year-old girl, he walked into her bathroom while she was taking a bath, and the girl covered herself with a washcloth.  Wallace requested that she remove the washcloth, and the girl refused.

When Wallace began to unzip his trousers, the girl screamed, and Wallace left. Local law enforcement arrested Wallace and charged him with indecent liberties with a minor. On November 18, 2014, the probation office filed an addendum to its petition, informing the court that Wallace had entered a conditional guilty plea and was convicted in state court of indecent liberties with a child. The state court sentenced him to five years in prison, with three years and two months suspended, and three years of supervised probation.

On July 12, 2012, Wallace was convicted in state court of driving eighty-five miles per hour in a fifty-five-mile-per-hour zone. He was sentenced to 110 days' imprisonment, with 105 days suspended, and two years' probation. Although Wallace appealed that conviction, his appeal had been denied before the district court's revocation hearing.

The revocation petition also charged Wallace with failure to notify the probation officer of a change in residence. On June 18, 2012, Wallace informed his probation officer that he had been evicted from his apartment and was residing at a local rescue mission. On July 25th, local police informed the probation officer that Wallace had not been at the mission since July 7th. After being questioned by his probation officer, Wallace stated that he was living in his car and explained that

4

he did not report the change in residence since he did not have an actual address to report.

Finally, the petition alleged that Wallace had failed to notify his probation officer of contact with law enforcement. On July 13th, police were dispatched to a transit center after receiving reports of a man offering women rides to their homes. The police made contact with Wallace, who had a woman in his vehicle. The officers reported that the woman appeared frightened, positioning herself so that the officers were between her and Wallace. Although Wallace denied offering rides to women, the woman indicated that he was in fact attempting to do so and that Wallace claimed he had given rides to other women. Wallace claimed that he did not know he needed to notify the probation office of this contact with police, although he was later banned from the transit center for his inappropriate conduct.

At the revocation hearing, Wallace admitted all the allegations other than the indecent liberties charge, since it was on appeal.[2] The district court found Wallace in violation of the conditions of his supervised release and noted that, for

---

[2] Wallace's appeal, in which he only alleged his right to a speedy trial was violated, has since been denied by both the Court of Appeals of Virginia and the Supreme Court of Virginia. See Wallace v. Commonwealth, 774 S.E.2d 482 (Va. Ct. App. 2015), aff'd, No. 151296, 2016 WL 3135485 (Va. June 2, 2016).

purposes of the United States Sentencing Commission's ("USSC") guidelines, his criminal history warranted a category of six, and his most serious violation, the indecent liberties conviction, was a grade A violation, garnering a policy statement range of fifty-one to sixty-three months of incarceration. In making a sentencing recommendation, the Government discussed the prior dismissed petition, emphasizing the "very serious" charges of rape and forcible sodomy. J.A. 41. The Government then moved on to the "very serious" and "very disturbing" indecent liberties conviction, terming the state court's sentence for this charge "a disgrace." J.A. 41-42. This pattern of dangerous behavior led the Government to request a sentence of at least forty-eight months.

Wallace disputed the categorization of the indecent liberties conviction as a grade A violation, and the court ordered the parties to submit briefs on the issue and adjourned the hearing. The parties later stipulated that the indecent liberties conviction was indeed a grade B violation, reducing the policy statement range to twenty-one to twenty-seven months.

At the reconvened revocation hearing, the Government again asked the court to consider the safety of the public and impose a sentence above the policy statement range. Wallace informed the court that he had obtained a civil judgment of $300,000 against his accuser on the dismissed rape and sodomy charges.

He explained that the only reason he pleaded guilty to the indecent liberties charge is that he had been in jail for almost two years at that point and essentially received a time-served sentence. Wallace suggested that the state-supervised probation rendered further federal supervision unnecessary. Finally, he requested the court to impose a sentence between six and eight months, well below the USSC's policy statement range.

In announcing its decision, the district court discussed the sentencing factors found in 18 U.S.C. § 3553(a), stating, "Deterrence is a factor. The public is a factor. Correctional treatment is a factor." J.A. 64. The court reviewed the sentencing report completed for Wallace's robbery and weapon convictions, noting his criminal record and family history. The court briefly touched on his arrest for rape and sodomy and discussed the knives and burglary tools discovered by the police in their search of Wallace's vehicle. The court went on to recognize that the state dismissed the rape and sodomy charges and Wallace had obtained a civil judgment against the accuser. The district court also took into consideration Wallace's reckless driving conviction and failure to inform the probation office about his change in residence and the incident of harassment at the transit center from which he had been banned.

After this fairly extensive discussion of Wallace's violations of his supervised release, the court stated:

So it is creepy. So I hope you're sincere in your desire to get treatment. I'll say that first.

I'm looking at the 3553(a) statutory factors. 21 to 27 months is not sufficient, in the Court's view, and, you know, the statutory max is 60. In light of your criminal history category of six, the violent charges that you [pleaded guilty to in 1992], and then you've been under our supervision, but you've got these flags which concern the Court.

So I'm looking at specific deterrence as it pertains to you and protecting the public. Then I do agree with [defense counsel] that you do not need any more federal supervision in light of all the supervision that you're going to be getting via the state.

So all that being said, I'm going to sentence you to 60 months. You will be remanded to the custody of the marshals. Then you will have no more federal supervised release once you do that. And then we just hope that you get well and hope you don't commit any other offenses that cause you to be returned back in a jumper or handcuffs or a cage for the rest of your days.

J.A. 68-69. Wallace filed a timely appeal. We have jurisdiction over this appeal under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

II.

The Court will uphold a revocation sentence "unless it falls outside the statutory maximum or is otherwise plainly unreasonable." United States v. Padgett, 788 F.3d 370, 373 (4th Cir. 2015).[3] [4] We first determine whether the sentence is

---

[3] We have omitted internal quotation marks, alterations, and citations here and throughout this opinion, unless otherwise noted.

8

procedurally and substantively reasonable. United States v. Wynn, 786 F.3d 339, 341 (4th Cir. 2015); see also United States v. Bennett, 698 F.3d 194, 200 (4th Cir. 2012) (instructing that this analysis should follow the directions provided in Gall v. United States, 552 U.S. 38 (2007)). A sentence is procedurally unreasonable if the district court failed to explain its sentence, neglected to consider the USSC's suggested sentencing range or the § 3553(a) sentencing factors when determining the sentence, or contemplated an improper § 3553(a) factor. See Gall, 552 U.S. at 51; Bennett, 698 F.3d at 200. In reviewing for substantive reasonableness, the Court must "take into account the totality of the circumstances, including the extent of any variance from the [policy statement] range." Gall, 552 U.S. at 51. If we find that the sentence is reasonable, the analysis ends there. Wynn, 786 F.3d at 341. If the sentence is unreasonable, the Court then determines whether it is plainly unreasonable, that is, whether it "run[s] afoul of clearly settled law." United States v. Thompson, 595 F.3d 544, 548 (4th Cir. 2010).

---

[4] The parties dispute whether we should review the sentence under the "plain error" standard. Because the Court finds that the sentence is proper under the more defendant-friendly "plainly unreasonable" standard, it is unnecessary to determine whether the "plain error" standard applies.

We are even more deferential to the district court's imposition of a revocation sentence than with the original sentence. A district court is given "broad discretion to revoke its previous sentence and impose a term of imprisonment up to the statutory maximum." United States v. Crudup, 461 F.3d 433, 439 (4th Cir. 2006); see also United States v. Moulden, 478 F.3d 652, 656 (4th Cir. 2007) (stating that our reasonableness "inquiry takes a more deferential appellate posture concerning issues of fact and the exercise of discretion than reasonableness review for guidelines sentences"). The USSC's suggested sentencing range for revocation is a non-binding "policy statement" rather than a "guideline." See U.S. Sentencing Guidelines Manual § 7B1.4; Thompson, 595 F.3d at 546-47; see also Moulden, 478 F.3d at 655. The district court has "greater flexibility in imposing a sentence for . . . supervised release violations than a guideline would allow." Moulden, 478 F.3d at 655.

### III.

Wallace argues that the sentence is procedurally unreasonable because the district court impermissibly considered a § 3553(a) factor not included in § 3583(e) and it failed to provide an adequate explanation when imposing the sentence. We address each contention in turn.

10

A.

18 U.S.C. § 3583 instructs that the district court must consider certain factors found in § 3553(a) when imposing a sentence upon revoking supervised release. These factors include the defendant's criminal history, the nature of the criminal offense, and the need for specific deterrence and protection of the public, among others. Compare 18 U.S.C. § 3583(e), with 18 U.S.C. § 3553(a). A court is not "expressly prohibit[ed] . . . from referencing other relevant factors omitted from the statute." United States v. Webb, 738 F.3d 638, 641 (4th Cir. 2013). For example, "the factors listed in § 3553(a)(2)(A) are intertwined with the factors courts are expressly authorized to consider under § 3583(e)." Id. The mere "reference to the § 3553(a)(2)(A) sentencing considerations, without more, [does not] automatically render a revocation sentence unreasonable." Id. at 642. Only when a district court "impose[s] a revocation sentence based predominately on the seriousness of the releasee's violation or the need for the sentence to promote respect for the law and provide just punishment" will the Court conclude that the sentence is procedurally unreasonable. Id.

Wallace maintains that the district court impermissibly took the seriousness of the violations into account in calculating his sentence. He points to the Government's

11

extensive discussion of the indecent liberties conviction, its characterization of the offense as "very serious," and its description of the state sentence as "a disgrace." Wallace also takes issue with the Government dwelling on the dismissed rape and sodomy charges and the district court's reference to those charges at the sentencing hearing. Finally, Wallace challenges the district court's consideration of the transit center incident, for which Wallace was never arrested or charged, and the court calling Wallace's actions "creepy."

Wallace's arguments are unavailing. The bulk of his contentions regarding the indecent liberties conviction and the dismissed rape and sodomy charges revolve around assertions the Government made to the district court instead of the court's own statements. It is unclear how Wallace expects to impute the Government's averments to the district court's reasoning, but we are not willing to take the speculative leap required to make that inference.

The district court clearly stated that a statutory maximum sentence was warranted for specific deterrence and public protection, two § 3553(a) factors it was permitted to consider. The court did not mention the word "serious" other than to state that it found Wallace "guilty of the serious violation" (in comparison to the other violations) of indecent liberties for the purposes of the sentencing hearing. J.A. 45.

12

Nor is it error that the court described the dismissed rape and sodomy charges in discussing Wallace's history. The district court certainly had the authority to acknowledge the events occurring between the beginning of Wallace's supervised release and the sentencing hearing, including those in the dismissed petition. In addition to the dismissed charges, the police found knives and other items constituting "burglary tools," according to the probation office, and the district court was permitted to factor this into its sentencing determination. There is no indication that the court based its decision on the "seriousness" of the dismissed rape and sodomy charges or considered them as a factor in arriving at its sentencing decision. In any event, the district court cured any possible error when it expressly recognized that the charges were dropped and that Wallace had obtained a civil judgment against the accuser.

Similarly, the district court did not impermissibly consider the transit center event as the violation for failure to inform the probation officer of contact with police. It was appropriate for the district court to recount the details surrounding that violation. Furthermore, although Wallace tries to tie the "creepy" comment to the court's transit center discussion, it is clear from the comment's position immediately

13

after the court's recognition of the indecent liberties conviction that it referred to Wallace's conduct as a whole.

B.

The district court is required to "adequately explain" its sentencing determination, regardless of whether it adopts the USSC's suggested sentence or makes an upward or downward departure. Thompson, 595 F.3d at 547. "A court need not be as detailed or specific when imposing a revocation sentence as it must be when imposing a post-conviction sentence, but it still must provide a statement of reasons for the sentence imposed." Id. The district court is not obligated to "robotically tick through § 3553(a)'s every subsection." Moulden, 478 F.3d at 657. The explanation need only be sufficient enough to allow us to "effectively review the reasonableness of the sentence" and assure us "that the sentencing court considered the § 3553(a) factors with regard to the particular defendant before [it]." Id.

Wallace argues that the district court's explanation for the statutory maximum sentence was insufficient. He also contends that the district court erred when it failed to consider a sentence somewhere between the policy statement range and the statutory maximum.

While the district court's sentencing explanation edges tenuously close to being insufficient, we find it adequate. The

14

court explicitly considered the USSC's policy statement range as required. Then, after a detailed account of all of the circumstances surrounding the charged violations, the court expressed concern about the violations in conjunction with Wallace's criminal history. The district court sentenced Wallace to the statutory maximum based on the § 3553(a) factors of specific deterrence and public protection. While succinct, the district court met the low bar of reasonableness that applies to revocation of supervised release. The brevity of the district court's analysis, although not ideal, does not require vacation and remand for resentencing.

Our holding is not inconsistent with the decision in Thompson. There, the Court vacated Thompson's sentence and remanded for a new sentencing proceeding after the district court sentenced him to the policy statement maximum term. See Thompson, 595 F.3d at 546. The district court had not applied the § 3553(a) factors and only discussed "Thompson's history, conduct, and characteristics" after announcing that sentence and in the context of whether he should be allowed to self-report to prison. Id. We held that the district court erred because it did not "giv[e] any indication of its reasons" for its sentence.

Id. at 547.  That is not the case here, where the district court provided sufficient, albeit brief, support for its decision.[5]

IV.

For the foregoing reasons, the order of the district court is

AFFIRMED.

---

[5] Had this been an appeal from an initial sentence, we would perhaps be inclined to decide differently.  However, in view of the higher deference afforded to the district court in revocation proceedings, and that the court's sentencing statements were well in excess of the deficiency found in Thompson, we conclude that the district court explained its decision sufficiently.