**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**No. 17-4037**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

ERICK JEMONTA GIBBS,

        Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington.  James C. Fox, Senior District Judge.  (7:13-cr-00110-F-1)

Argued:  January 25, 2018                       Decided:  July 16, 2018

Before GREGORY, Chief Judge, and NIEMEYER and AGEE, Circuit Judges.

Affirmed by published opinion.  Judge Niemeyer wrote the majority opinion, in which Judge Agee joined.  Chief Judge Gregory wrote a dissenting opinion.

**ARGUED:**  Sonya Maria Allen, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Donald Russell Pender, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:** Louis C. Allen, Acting Federal Public Defender, Stephen C. Gordon, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  John Stuart Bruce, United States Attorney, Jennifer P. May-Parker, First Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

NIEMEYER, Circuit Judge:

After Erick Gibbs admitted to four violations of the conditions of his supervised release, the district court, upon giving its explanation for doing so, imposed the Guidelines-recommended sentence of 24-months' imprisonment. Gibbs contends that the sentence was plainly procedurally unreasonable because the district court did not adequately address his arguments in favor of a downward-variance sentence. We conclude, however, that the record amply demonstrates that the district court, in reaching its decision to impose the recommended sentence, considered Gibbs's arguments for a downward variance and addressed several of them, while highlighting the seriousness of the violations, as well as Gibbs's extensive criminal history. Accordingly, we affirm.

I

Gibbs pleaded guilty in August 2010 to possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1), and thereafter he was sentenced to 36 months' imprisonment and 3 years' supervised release.

Six months after Gibbs was released from prison, he was charged in state court for possession of drug paraphernalia and, upon conviction, was sentenced to 45 days' imprisonment, suspended, and 18 months' probation. Then, in February 2013 and again in August 2013, Gibbs tested positive for the use of marijuana. Finally, in February 2014, Gibbs participated in a conspiracy to traffic in heroin and maintained a vehicle, dwelling, or place for controlled substances and, upon conviction, was sentenced to 19 to 32 months' imprisonment. All four of these incidents violated the conditions of Gibbs's

2

supervised release, and Gibbs's probation officer accordingly filed a motion for revocation. At the revocation hearing, Gibbs admitted to all four violations, and the court thus found "as a fact that the defendant violated the terms and conditions of his 2010 judgment." The court concluded further that Gibbs's drug trafficking offense was a Grade A violation, the most serious. *See* U.S.S.G. § 7B1.1(a).

As provided by the policy statements in Chapter 7 of the Sentencing Guidelines, Gibbs's Grade A violation mandates revocation of supervised release, *see* U.S.S.G. §§ 7B1.1(a)(1), 7B1.3(a)(1), and when a Grade A violation is coupled with Gibbs's Criminal History Category VI, a sentence of 33 to 41 months' imprisonment is recommended, *see id.* § 7B1.4. But because the maximum revocation sentence that Gibbs could receive, given his underlying conviction, was 24 months' imprisonment, *see* 18 U.S.C. § 3583(e)(3), that sentence became his recommended sentence, U.S.S.G. § 7B1.4(b)(1). Counsel for both parties recognized as much.

While presenting no evidence at the hearing, Gibbs's counsel asked the court to impose a downward-variance sentence of 12 months' imprisonment based on three "mitigation factors." As she stated to the court, "There's extreme hardship on his family. There is the time already served [on the drug-trafficking conviction]. There may be, thirdly, some discussion from the Government."

On the first factor, which was counsel's main argument, counsel stated that a 24-month prison term would deprive Gibbs's three children of significant income and a stable home environment and would impose hardship on Gibbs's mother, who had relocated to care for the children during his absence, as his wife was deceased. With

3

respect to Gibbs's earning potential, counsel noted that Gibbs "went through a program called Youth Build, where he learned a significant amount of skills. He can build a house from the ground up, framing, painting, landscaping." She also pointed to Gibbs's employment, stating that Gibbs had been employed "at the House of Raeford, the chicken plant" and at "Peters Landscaping Company, in Wilmington. He worked seven days, from 10 to 3. So he has skills that he can build upon once he gets this behind him." Counsel also noted that Gibbs had been "working toward his GED."

On the second mitigation factor, counsel noted that Gibbs had already served 14 months on his drug-trafficking conviction and therefore argued that he had already been duly punished.

And on the third factor, she stated, "hopefully, the Government will discuss with this Court" Gibbs's assistance to law enforcement after his drug-trafficking conviction.

Counsel then summarized Gibbs's justification for a downward variance:

> Now, I'm asking for 12 months . . . [a]nd I do think that period of time will be enough time to not only punish Mr. Gibbs, but certainly deter him from any further conduct. But . . . it is [also] a reasonable time to be away from the unique and extraordinary situation that he has with his family. So that when he returns home, he can immediately jump in with the skills that he has and be able to provide resources for them[.]

In response, the government argued that Gibbs's Grade A violation was a "serious charge" and that otherwise he had an extensive criminal history:

> 200 bags of heroin was the amount that was involved with the second conviction in 2014. And Mr. Gibbs has had several prior drug convictions and has had 12 convictions prior to his federal sentence. And it's over a six-year period. And several of those were assaultive in nature. He had two assaults. He had multiple resisting officers. So he has not had a good track record.

4

The government noted further that one of the violations at issue — Gibbs's possession of drug paraphernalia — occurred within months after beginning his term of supervised release. But the government did acknowledge Gibbs's cooperation with law enforcement, explaining that "after the state [offense] with the 200 bags of heroin, [Gibbs] did meet with ATF and did assist them . . . with regard to criminal activity in the Wilmington area." The government allowed that although the information Gibbs provided had not yet resulted in any charges, law enforcement officers believed that the information was "helpful" and "truthful."

After the district court offered Gibbs the opportunity to speak on his own behalf, which he declined to do, the court imposed the Guidelines' recommended sentence of 24-months' imprisonment. In doing so, it explained:

> On March 1st, 2013, the defendant pled guilty to misdemeanor possession of drug paraphernalia in Brunswick County District Court and was sentenced to 45 days' imprisonment, suspended, 18 months of supervised probation. On January 19, 2015, the defendant was arrested and charged with felony conspiracy to traffic opium/heroin and felony maintain vehicle/dwelling/place for controlled substances. On September 17th, 2015, defendant pled guilty to conspiracy to sell heroin and maintain a vehicle/dwelling/place for controlled substances. The court imposed a 19 to 32 month term of imprisonment. On February 25th, 2013, and August 1st, 2013, the defendant tested positive for marijuana.
>
> The defendant has a history of gang affiliation and has prior convictions for assault, marijuana possession, resisting a public officer, possession of stolen goods, trespass, possession of cocaine, possession of a firearm by a felon, possession of a handgun by a minor, carrying a concealed weapon, and driving while license revoked.
>
> He has a scant employment record and little in the way of marketable job skills. While on supervision, the defendant did make an effort to obtain his GED. Upon consideration of Chapter 7 of the [Sentencing Guidelines Manual] and the relevant factors listed in 18 U.S.C. § 3553(a), the

5

defendant's term of supervision is revoked and the defendant is ordered to be committed to the custody of the [BOP] . . . for a period of 24 months.

When the court then asked defense counsel if she had anything further to add, she stated:

Yes, Your Honor. I would ask you to reconsider the range of 24 months again — if nothing else, for the extreme hardship that it's going to be on his family at this point. They have done a significant amount to try to mitigate this themselves. But him being away for two years, Your Honor, that's [something] I believe . . . the Court can consider. I do not — as the United States has said, they believe that he should have . . . something coming off.

In response, the court said, "All right." Then, after a "[b]rief pause in the proceeding" (as noted in the transcript), the court stated, "No change. Twenty-four months."

From the district court's judgment entered January 12, 2017, Gibbs appealed.

II

Gibbs contends that his sentencing was plainly unreasonable as a procedural matter because the district court failed to address or addressed inadequately his arguments for a downward-variance sentence. In particular, his counsel argues:

Perhaps most troubling, the district court, with no explanation whatsoever, found Mr. Gibbs had "little in the way of marketable job skills." This finding was strictly contrary to what defense counsel had asserted about her client and had offered as a mitigating factor, and yet the court did not explain why it believed Mr. Gibbs had little marketable job skills. Most of us cannot "build a house from the ground up."

The government responds that the court gave numerous reasons for imposing its 24-month term of imprisonment and that revocation sentences are subject to extra-deferential review. It points out that Gibbs's violations of his supervised-release conditions were sufficiently severe "breaches of trust" to outweigh the reasons that he advanced in favor of a downward variance. And it argues that the district court gave

6

Gibbs sufficient individualized consideration when imposing his revocation sentence, emphasizing that it is clear that the court considered his arguments for a downward variance, such that the court committed no procedural error in sentencing him, let alone any error that was plain.

The question thus presented is whether the district court provided an adequate explanation when imposing Gibbs's 24-month revocation sentence, given Gibbs's arguments for a downward variance.

At the outset, it is important to review what is demanded of district courts in imposing revocation sentences. When a defendant appears before a court for revocation of his supervised release, he is already subject to the sentence of his criminal judgment, about which he presumably received an appropriate explanation, including an explanation of the range of sentence that could be imposed and why he was receiving a particular sentence. He was also advised of his supervised release and the conditions imposed for it. Thus, as the Sentencing Guidelines emphasize, when a defendant violates those conditions, his violation is not treated as new criminal conduct but rather as a "breach of trust" in failing to abide by the conditions of his original sentence, for which the law imposes "sanctions." U.S.S.G. ch. 7, pt. A, introductory cmt. 3(b); *see also United States v. Crudup*, 461 F.3d 433, 437–38 (4th Cir. 2006). When such a violation also involves criminal conduct, the Guidelines leave punishment for that "to the court responsible for imposing the sentence for that offense." *Id*. Recognizing the distinction between original sentencing and revocation sentencing, the Sentencing Commission has adopted "revocation policy statements" that provide sanctions for "three broad grades of

7

violations," formalizing an approach that provides district courts with "greater flexibility" than would be provided by specific revocation guidelines to determine the appropriate sanction. U.S.S.G. ch. 7, pt. A, introductory cmt. 3.

Consistent with this framework, we have held that a court of appeals reviewing a district court's revocation sentence must adopt a more "deferential appellate posture" than when reviewing original sentences to "account [for] the unique nature of supervised release revocation sentences." *Crudup*, 461 F.3d at 438–39 (citations omitted); *see also United States v. Moulden*, 478 F.3d 652, 657 (4th Cir. 2007) (describing the "modified reasonableness analysis" for reviewing sentences imposed upon revocation of probation and supervised release) (internal quotation marks omitted). In this vein, "a [district] court's statement of its reasons for going beyond non-binding *policy statements* in imposing a [revocation] sentence . . . need not be as specific as has been required when courts departed from *guidelines* that were, before *Booker*, considered to be mandatory." *Crudup*, 461 F.3d at 439 (quoting *United States v. Lewis*, 424 F.3d 239, 245 (2d Cir. 2005)). For these reasons, while original sentences are reviewed for "reasonableness," we have recognized that even an unreasonable revocation sentence may stand unless it is *plainly* unreasonable. *Id*. at 438–39.

This structure of appellate review of revocation sentences still addresses distinctly both *procedural* reasonableness and *substantive* reasonableness, but on the more deferential basis noted. A revocation sentence passes procedural muster if it is supported by "a sufficient explanation so that we may effectively review the reasonableness of the sentence," which must encompass "an assurance that the sentencing court considered the

[applicable sentencing] factors with regard to the particular defendant before [it] and also considered any potentially meritorious arguments raised by the parties with regard to sentencing." *Moulden*, 478 F.3d at 657. And a sentence passes substantive muster if the totality of the circumstances indicates that the court had a "'proper basis for its conclusion' that the defendant should receive the sentence imposed." *United States v. Slappy*, 872 F.3d 202, 207 (4th Cir. 2017) (quoting *Crudup*, 461 F.3d at 440).

As with original sentencing, a revocation sentence that is within the recommended Guidelines range is "presumed reasonable." *United States v. Webb*, 738 F.3d 638, 642 (4th Cir. 2013). And although the procedural and substantive aspects of review are distinct, less explanation is required for such a sentence than for a sentence that departs from the Guidelines. *See United States v. Thompson*, 595 F.3d 544, 547 (4th Cir. 2010) (noting that less explanation is required when imposing a within-Guidelines range revocation sentence); *see also Rita v. United States*, 551 U.S. 338, 356–57 (2007) (applying same principle in the context of original sentencing). Similarly, "a major departure [from the Guidelines] should be supported by a more significant justification than a minor one." *Gall v. United States*, 552 U.S. 38, 50 (2007); *see also Slappy*, 872 F.3d at 208 (concluding that the district court's "failure to address [the defendant's] arguments in favor of a *within-policy-statement-range sentence* constitute[d] procedural error") (emphasis added); *id*. at 209 (explaining that "the court's failure to address Slappy's nonfrivolous arguments in favor of a within-range sentence was compounded by its failure to explain why it was necessary to impose the statutory maximum sentence").

In this case, therefore, the dispositive question reduces to whether, in context, the district court's explanation of Gibbs's sentence provided a sufficient assurance that it considered his arguments for a downward variance. *See Moulden*, 478 F.3d at 657; *see also Slappy*, 872 F.3d at 210 (holding that the explanation "must provide enough . . . to assure this Court that it considered the parties' arguments and had some basis for choosing the imposed sentence").

Gibbs's primary argument for why he should have received a downward-variance sentence was that the recommended sentence would cause hardship to his family due to both his absence and the loss of income that he otherwise could provide. In support of this argument, Gibbs's counsel asserted that Gibbs had certain job skills and a high degree of employability, though Gibbs provided no evidence to support those assertions. He now maintains that the district court responded to his arguments with a single sentence — that Gibbs had "a scant employment record and little in the way of marketable job skills" although he "did make an effort to obtain his GED" — contrary to his counsel's representations at the revocation hearing. Gibbs also emphasizes that, in response to his request to reconsider the 24-month sentence "for the extreme hardship that it's going to be on his family," the court stated simply, "No change."

We conclude, however, that the record supports the district court's conclusion that Gibbs had a "scant" employment record and job skills. Counsel for Gibbs stated at the revocation hearing that Gibbs went through a program called "Youth Build" "where he learned a significant amount of skills" relating to building a house. But she provided no evidence that Gibbs ever applied that learning and used those skills. Indeed, in relating

10

Gibbs's job experience, counsel for Gibbs stated only that he had been employed at a chicken plant and at a landscaping company, neither of which involved building a house or even working on a house, and she never specified the duration of those positions. Thus, it was hardly "contrary" to the record for the court to have concluded that Gibbs had only scant work experience and job skills.

And as to the hardship that a 24-month sentence would impose on Gibbs's family, the court clearly considered it. Indeed, when explicitly asked to do so, the court stated, "All right." After giving the argument thought, however, the court announced that it was not prepared to deviate from the 24-month recommendation. In the same way, the court considered and rejected Gibbs's request for a downward variance based on his cooperation with law enforcement. When Gibbs's counsel asked the court to consider a downward variance, "as the United States has said they believe that he should have . . . something coming off," the court's response of "All right" also covered that request. But, as noted, the court rejected the request, determining to remain with the recommended 24-month sentence.

This consideration of Gibbs's arguments comports with the standard for original sentencing articulated in *Rita* and, *a fortiori*, satisfies the more relaxed standard for revocation sentencing. As the Supreme Court stated in *Rita*, "[w]here a matter is as conceptually simple as in the case at hand and the record makes clear that the sentencing judge *considered* the evidence and arguments, we do not believe the law requires the judge to write more extensively." 551 U.S. at 359 (emphasis added); *see also id*. at 359–60 (recognizing that the sentencing court did not address all of the defendant's

11

arguments); *Slappy*, 872 F.3d at 210 (requiring the court to "provide enough" to indicate "that it *considered*" the defendant's arguments) (emphasis added).

Juxtaposing the district court's responses to Gibbs's arguments for leniency with the court's affirmative statements for why it was imposing the 24-month sentence — the four incidents that violated the terms of Gibbs's supervised release, including two convictions, one for possession of drug paraphernalia and the other for conspiracy to traffic in heroin, as well as Gibbs's long criminal history involving "gang affiliation [and] convictions for assault, marijuana possession, resisting a public officer, possession of stolen goods, trespass, possession of cocaine, possession of a firearm by a felon, possession of a handgun by a minor, [and] carrying a concealed weapon" — the court clearly and properly manifested its reasons for giving the recommended 24-month sentence. The court's comments about Gibbs's arguments, while not extensive, nonetheless do enable us to "effectively review the reasonableness of [Gibbs's] sentence" with the "assurance" that the court "*considered* any potentially meritorious arguments raised by [Gibbs] with regard to [his] sentencing." *Moulden*, 478 F.3d at 657 (emphasis added). If the court had determined to depart from the Guidelines, perhaps a more fulsome explanation might have been required. *See Gall*, 552 U.S. at 50. But in this case, the district court imposed the recommended Guidelines sentence, and the procedure that the court followed in imposing the revocation sentence was not unreasonable — and certainly not *plainly* unreasonable. *See Crudup*, 461 F.3d at 439; *see also Slappy*, 872 F.3d at 208 (noting that "[i]f a revocation sentence — even an unreasonable one — is not 'plainly unreasonable,' we will affirm it").

12

Gibbs argues that our decisions in *Thompson* and *Slappy*, where we reviewed and vacated revocation sentences, support his contention that the district court's sentence here was procedurally unreasonable. But we find his reliance on these cases misplaced.

In *Thompson*, after recognizing that a "district court commits significant procedural error where it 'fail[s] to adequately explain the chosen sentence,'" 595 F.3d at 547 (quoting *Gall*, 552 U.S. at 51) (alteration in original), we vacated the revocation sentence, even though it was within the range recommended by the Sentencing Guidelines, because the sentence was *supported by no explanation whatsoever*. As we observed, the district court "simply stated: 'It's the judgment of the Court the defendant be committed to the custody of the Federal Bureau of Prisons for a term of 18 months.'" *Id.* at 547. We explained aptly:

> We may be hard-pressed to find any explanation for within-range, revocation sentences insufficient given the amount of deference we afford district courts when imposing these sentences; but a district court may not simply impose sentence without giving *any* indication of its reasons for doing so.

*Id.* Here, of course, the district court did in fact give its reasons for the sentence imposed, and it considered and addressed, although briefly, Gibbs's arguments for a downward variance. Contrary to Gibbs's argument, *Thompson* thus supports upholding the revocation sentence of the district court as procedurally reasonable.

Nor does our decision in *Slappy* compel a different result. During the revocation hearing, the defendant asked the district court to impose a term of imprisonment *within the range* recommended by the Sentencing Guidelines, which was 7 to 13 months' imprisonment, advancing several arguments for leniency related to "her post-

13

incarceration conduct and attempts at rehabilitation." *Slappy*, 872 F.3d at 205. Instead of imposing a within-Guidelines sentence, however, the district court imposed an upward-variance sentence of 36 months' imprisonment — the statutory maximum — "without addressing [the defendant's] arguments." *Id.* at 206; *see also id.* at 208 (noting that the district court "did not so much as mention her arguments"). In those circumstances, we vacated the revocation sentence, concluding that "[b]ecause the court failed to address Slappy's nonfrivolous arguments *in favor of a within-range sentence* or to explain why the statutory maximum sentence was necessary, we find that Slappy's revocation sentence [was] procedurally unreasonable." *Id*. at 209–10 (emphasis added). Thus, while the district court in *Slappy* entered an upward-variance sentence without even "mention[ing] [the defendant's] arguments," *id*. at 210, the district court here imposed a within-Guidelines sentence and did address, albeit briefly, Gibbs's arguments. More importantly, the record here, taken as a whole, makes clear that the court, as required, *considered* those arguments.

At bottom, we conclude that the district court imposed a procedurally reasonable revocation sentence, and, because Gibbs does not argue that his sentence was substantively unreasonable, we affirm. In doing so, we recognize that because Gibbs's revocation sentence is not unreasonable, it certainly cannot be plainly so, as would be required for us to disturb it. *See Slappy*, 872 F.3d at 208; *Crudup*, 461 F.3d at 439.

AFFIRMED

14

GREGORY, Chief Judge, dissenting:

The majority ignores established Supreme Court and Fourth Circuit precedent that requires a sentencing court to address a defendant's nonfrivolous arguments for a downward variance in sentencing.[*] Disconcertingly, the majority contends that the "record amply demonstrates" that the district court here addressed Erick Gibbs's four nonfrivolous arguments for a downward variance: his extreme family hardship, the time he had already served, his employability, and the substantial assistance he provided in murder, bank robbery, and drug investigations. But the majority's characterization is blatantly contradicted by the record itself. The district court made *no* mention of three of Gibbs's four arguments, much less explained its reasoning. The majority conveniently omits that a police detective was present at sentencing to testify about Gibbs's assistance in the investigations, and that the district court declined to hear from him without any explanation or further comment concerning the Government's mitigating proffer. The majority further knits from whole cloth an interpretation of the words "all right" and a brief pause—made *after* the sentence was imposed—that, in its view, miraculously addressed not one but *three* of Gibbs's arguments. By resting much of its analysis on this

---

[*] *Gall v. United States,* 552 U.S. 38, 51 (2007) (holding that a district court must "adequately explain the chosen sentence"); *United States v. Blue*, 877 F.3d 513, 518 (4th Cir. 2017) (holding that an adequate explanation requires an individualized assessment that considers the defendant's nonfrivolous arguments for a downward departure); *United States v. Slappy*, 872 F.3d 202, 207–08 (4th Cir. 2017) (same); *United States v. Thompson*, 595 F.3d 544, 547–48 (4th Cir. 2010) (same); *United States v. Lynn*, 592 F.3d 572, 581–82 (4th Cir. 2010) (same); *United States v. Carter*, 564 F.3d 325, 328–29 (4th Cir. 2009) (same).

pause rather than anything the district court actually said, the majority implicitly concedes that the court sentenced Gibbs to 24 months' imprisonment without any reference to his nonfrivolous mitigating arguments. Further troubling, the majority conflates substantive and procedural reasonableness, applying our substantive reasonableness presumption to Gibbs's procedural challenge.

By papering over the district court's failings, the majority essentially concludes that Gibbs's extensive criminal history excused the district court from its clearly established obligation to say *something* about Gibbs's nonfrivolous arguments. This flies in the face of our caselaw. Tellingly, the majority does not even cite our decision in *United States v. Blue*, let alone attempt to distinguish this clear and controlling circuit precedent. I am compelled to dissent.

I.

In 2010, Gibbs pled guilty to Possession of Firearm by a Convicted Felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The district court sentenced Gibbs to 36 months in prison, followed by an equivalent period of supervised release. Gibbs served his prison sentence and began his term of supervised release on June 29, 2012.

In January 2015, Gibbs's probation officer filed a Motion for Revocation on Offender Under Term of Supervised Release on the basis of his use of a controlled substance (marijuana), as well as two instances of criminal conduct. First, the probation officer had uncovered the fact that Gibbs had pled guilty to a North Carolina misdemeanor Possession of Drug Paraphernalia charge in March 2013, for which he was

16

sentenced to 45 days in prison and 18 months of supervised probation. Second, Gibbs was arrested in January 2015 and charged with felony Conspiracy to Traffic Opium/Heroin, as well as felony Maintenance of a Vehicle/Dwelling/Place for Controlled Substance. In October 2015, Gibbs's probation officer filed an Amended Motion for Revocation on Offender Under Term of Supervised Release to reflect Gibbs's guilty plea to the heroin-selling charge, for which Gibbs was sentenced to 19 to 32 months' imprisonment.

At his revocation hearing, Gibbs admitted to violating the terms and conditions of his supervised release as described above. The parties agreed that it was a Grade A violation with a statutory maximum sentence of 24 months, as well as a Guidelines range of 24 months.

Gibbs made four nonfrivolous arguments in favor of a shorter sentence of 12 months. First, Gibbs argued that he had already served 14 months in state prison for the offenses underlying the violation of his supervised release. Second, he argued that a prolonged prison sentence would bring extreme hardship to his family, who attended Gibbs's sentencing hearing in a show of support. Because the mother of Gibbs's three young children is deceased, Gibbs's mother had taken a significant reduction in pay to relocate to Wilmington, North Carolina, to help care for the children. Gibbs argued that his lengthy imprisonment would thus strain the emotional lives of his children—who have a "unique bond" with their father—as well as subtract his earnings from the household. Third, Gibbs described a work program that he had completed, which provided him with the skills to "build a house from the ground up," including framing,

17

painting, and landscaping. Gibbs had also been previously employed by two separate employers. At the time of the hearing, Gibbs was also pursuing his GED.

Finally, in addition to his own mitigating arguments, Gibbs adopted the Government's statements recounting his cooperation in providing law enforcement with helpful information regarding criminal activity. The Government explained that "to his credit," Gibbs had provided agents with truthful information about a murder, a bank robbery, and drug activity in the Wilmington area. The Government's agent-witness was available to further elaborate on Gibbs's cooperative behavior, but the court declined to hear from him.

At sentencing, the district court reiterated Gibbs's violations of supervised release and summarized Gibbs's criminal background as follows:

> The defendant has a history of gang affiliation and has prior convictions for assault, marijuana possession, resisting a public officer, possession of stolen goods, trespass, possession of cocaine, possession of a firearm by a felon, possession of a handgun by a minor, carrying a concealed weapon, and driving while license revoke.

J.A. 29. The court added that Gibbs "has a scant employment record and little in the way of marketable job skills" and mentioned only in passing Gibbs's efforts to obtain his GED. *Id.* It then revoked Gibbs's supervised release and sentenced him to a 24-month term of imprisonment. By way of explanation, the court said only:

> Upon consideration of Chapter 7 of the United States Sentencing Guidelines and the relevant factors listed in 18 U.S.C. Section 3553(a), the defendant's term of supervision is revoked, and the defendant is ordered to be committed to the custody of the Bureau of Prisons or its authorized representative for a period of 24 months.

18

*Id.* When Gibbs requested that the court reconsider the 24-month range, the court replied, "All right," paused briefly, and then declared, "No change. Twenty-four months." J.A. 30.

## II.

As the majority opinion notes, district courts have broad discretion in the context of revocation sentencing. *United States v. Webb*, 738 F.3d 638, 640 (4th Cir. 2013). That discretion, however, is not unlimited. *United States v. Thompson*, 595 F.3d 544, 547 (4th Cir. 2010). While we assume a more deferential appellate posture when reviewing revocation sentences, *United States v. Moulden*, 478 F.3d 652, 658 (4th Cir. 2007), we nonetheless "follow generally the procedural and substantive considerations" used in reviewing original sentences. *United States v. Crudup*, 461 F.3d 433, 438–39 (2006).

This Court will affirm a revocation sentence if it is within the prescribed statutory range and is not "plainly unreasonable." *Id.* at 439. To find a sentence plainly unreasonable, we must first determine whether it is "unreasonable at all." *Thompson*, 595 F.3d at 546. The unreasonableness inquiry proceeds in two steps. *Gall v. United States*, 552 U.S. 38, 51 (2007). First, we evaluate the sentencing court for procedural reasonableness. *Id.* Errors amounting to procedural unreasonableness include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Id.* Only if no

19

significant procedural errors were committed do we go on to evaluate substantive reasonableness. *Id.* Unlike the procedural analysis, the substantive analysis "take[s] into account the totality of the circumstances" surrounding a defendant's sentencing. *Id.* Here, Gibbs challenges only the procedural reasonableness of his revocation sentence.

Gibbs's sentencing was marred by two significant procedural errors. First, the district court failed to address Gibbs's nonfrivolous arguments in favor of a downward variance. Second, the district court failed to adequately explain its imposed sentence. By affirming the district court's sentence despite these procedural errors, the majority opinion fails to follow the binding law of this Circuit and the Supreme Court.

### A.

For a revocation sentence to be procedurally reasonable, a court must respond to the defendant's nonfrivolous mitigating arguments. *United States v. Lynn*, 592 F.3d 572, 585 (4th Cir. 2010); *United States v. Slappy*, 872 F.3d 202, 207 (4th Cir. 2017). Both Supreme Court and Fourth Circuit precedent makes clear that the adequacy of a sentencing court's explanation centers on its acknowledgment of the parties' arguments. *See Rita v. United States*, 551 U.S. 338, 339 (2007); *Lynn*, 592 F.3d at 584. As such, a sentencing court's obligation extends to each and every argument the defendant makes. *United States v. Blue*, 877 F.3d 513, 516, 519 (4th Cir. 2017) (holding that the district court failed to adequately address the defendant's mitigating arguments when it addressed only two out of eight).

At Gibbs's sentencing hearing, Gibbs presented four nonfrivolous arguments to the district court: (1) the time Gibbs already served for the offenses underlying his

20

release violation, (2) the emotional and financial hardship that a longer sentence would impose on Gibbs's family, (3) Gibbs's good prospects for future employment, and (4) the assistance Gibbs provided Wilmington-area law enforcement (adopted from the Government's statements).

Unlike the majority, I see no place in the record where the district court acknowledged Gibbs's nonfrivolous arguments, much less explained why he rejected them. *Slappy*, 872 F.3d at 207; *Lynn*, 592 F.3d at 585. Even if one were to take the court's mention that Gibbs has "little in the way of marketable job skills"—an observation that appears plainly mistaken in light of the undisputed facts in the record— as evidence that the court considered Gibbs's second argument, the court still entirely overlooked three of Gibbs's four mitigating arguments. *Blue*, 877 F.3d at 516, 519. In announcing its chosen sentence, the court made no mention of Gibbs's time already served, his family's circumstances, or his assistance to the Government.

The district court's failure to mention Gibbs's family is particularly troubling, as the bulk of Gibbs's mitigation revolved around his family's unique circumstances, such as the fact that the mother of his three small children is deceased. Similarly, the district court uttered not a single word about Gibbs's assistance to Wilmington-area law enforcement with regard to several serious crimes, including a bank robbery and a murder. The fact that the court declined to hear from the law enforcement agent who worked with Gibbs—who was present and available to testify at Gibbs's hearing— exemplifies the court's demonstrated lack of engagement with Gibbs's nonfrivolous mitigating arguments.

21

Sympathetic to the natural idiosyncrasies of court proceedings, we have recognized that acknowledgment of the parties' arguments may be clear from the context of the court's comments. *See United States v. Montes-Pineda*, 445 F.3d 375, 381 (4th Cir. 2006). For example, appellate courts "may [] infer that a sentencing court gave specific attention to a defendant's argument for a downward departure if the sentencing court engage[d] counsel in a discussion about that argument." *Blue*, 877 F.3d at 521 (citing *Gall*, 552 U.S. at 54). But the record contains no contextual clues, such as a conversation with counsel, to suggest that the district court considered Gibbs's arguments. During Gibbs's presentation, the district court asked no questions and made no comments beyond those required to keep the proceedings moving. *Lynn*, 592 F.3d at 584. Nor did the court give any indication that it found Gibbs's arguments persuasive or unpersuasive. *Id.*

With nowhere else to turn, the majority reads heavily into the court's two-word response—"all right"—and subsequent pause after being asked by Gibbs's counsel to reconsider the 24-month range. The majority takes these two words and the pause to adequately address not one, but three separate arguments. *See Ante* at 12. For the majority, the district court's "brief pause," noted on the hearing transcript, signifies that the court "[gave] the argument[s] thought," as well as "considered and rejected" Gibbs's arguments. *Id.* This conclusion seems tenuous at best—especially because we have held that "an appellate court may not guess at the district court's rationale, searching the record for statements by the Government or defense counsel or for any other clues that might explain a sentence." *United States v. Carter*, 564 F.3d 325, 329–30 (4th Cir.

22

2009).  Moreover, the terse exchange upon which the majority opinion relies occurred *after* the district court had already handed down Gibbs's sentence.  This renders the court's pause even less satisfying, as the parties' arguments are meant to help the court arrive at an appropriate and individualized sentence in the first place.  *See Lynn*, 592 F.3d at 584–85 ("Indeed, the only time the district court even acknowledged the defendant's arguments was *after* it had imposed sentence; even then, it did so obliquely.").

The district court neither directly nor indirectly addressed Gibbs's nonfrivolous arguments for a downward variance.  This amounts to a significant procedural error, which renders Gibbs's sentence procedurally unreasonable.

B.

The court that sentenced Gibbs also failed to adequately explain the sentence it chose.  A procedurally sound sentence must provide an adequate explanation for the sentence imposed.  *Gall*, 552 U.S. at 50–51; *see also* 18 U.S.C. 3553(c) ("The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence[.]").  Sentences that fall within the suggested Guidelines range are no exception.  *Montes-Pineda*, 445 F.3d at 380.  A district court's explanation "need not be lengthy, but the court must offer some 'individualized assessment' justifying the sentence imposed."  *Lynn*, 592 F.3d at 584 (citing *Gall*, 552 U.S. at 50; *Carter*, 564 F.3d at 330).  Adequate explanation not only ensures individualized sentences, but also "allow[s] for meaningful appellate review" and "helps [the sentencing process] evolve."  *Gall*, 552 U.S. at 50; *Rita*, 551 U.S. at 357.

23

An adequate explanation is one that "consider[s] the factors outlined in 18 U.S.C. § 3553(a) and 'articulate[s] the reasons for selecting the particular sentence.'" *United States v. Helton*, 782 F.3d 148, 152 (4th Cir. 2015) (quoting *United States v. Green*, 436 F.3d 449, 456 (4th Cir. 2006)). Although a district court "need not be as detailed or specific when imposing a revocation sentence as it must be when imposing a post-conviction sentence," *Thompson*, 595 F.3d at 547, it must still "provide a statement of reasons for the sentence imposed," *Moulden*, 479 F.3d at 657.

Contrary to common sense, the majority opinion suggests that the sentencing court's mere recitation of Gibbs's criminal history is enough to satisfy this standard. *See Ante* at 13. But it is hard to imagine how such a description, absent any express reasoning, can be fairly called an "explanation." *See Explanation*, Black's Law Dictionary (10th ed. 2014) (defining "explanation" as the "activity or process of expounding, interpreting, or making something intelligible;" especially "the process of demonstrating by reasoning . . . the causal or logical antecedents or conditions of some event or thing to be accounted for"). A court's simple restatement of the matter at hand—i.e., recounting Gibbs's violations of his supervised release—is not the same as an explanation for the sentence imposed.

The notion that Gibbs's criminal history constitutes an adequate explanation seems even more unlikely in the context of the revocation of supervised release. While the Guidelines "base original sentences primarily on the severity of the defendant's criminal conduct and criminal history," *Crudup*, 461 F.3d at 437, the Guidelines explain that revocation sentences "should sanction primarily the defendant's breach of trust, while

24

taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator." *U.S. Sentencing Guidelines Manual*, ch. 7, pt. A, introductory cmt. 3(b) (U.S. Sentencing Comm'n 2016). Thus, even if a recitation of Gibbs's criminal past somehow comprises an explanation, it at most explains a tangential, and not a primary, issue. *Moulden*, 479 F.3d at 657.

Regardless of the relevance of Gibbs's criminal history, § 3553(c) mandates that the sentencing court "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). Adequate explanations should demonstrate that the sentencing judge considered the § 3553(a) factors. *Helton*, 782 F.3d at 152. In *Thompson*, we vacated the appellant's revocation sentence because of the district court's failure to adequately explain its reasoning. 595 F.3d at 547. Nonetheless, even the district court in *Thompson* managed to note that it "could not find that Thompson 'was not a danger to the community.'" 595 F.3d at 549 (Niemeyer, J., dissenting). Similarly, in *Slappy*, we held that the sentencing court failed to adequately explain the appellant's sentence. 872 F.3d. at 204. However, even the inadequate explanation offered by the district court there provided more of an explanation than Gibbs received. Echoing the language of § 3553(a), the district court in *Slappy* stated, "This sentence is imposed to afford adequate deterrence to criminal conduct." *Id.* at 206. But with Gibbs, the district court did not offer even an *inadequate* explanation for why it chose this particular sentence, let alone the statutory maximum. *See, e.g.*, *Slappy*, 872 F.3d at 209.

By handing down Gibbs's sentence with no rationale for the sentence imposed, the district court did not meet its obligation to adequately explain its chosen sentence. Such a significant procedural error cannot survive our reasonableness review.

\*     \*     \*

In sum, our precedent overwhelmingly holds that a sentencing court must both respond to the nonfrivolous mitigating arguments of the defendant—be it in the form of a direct response or a demonstrated engagement with counsel—as well as adequately explain its decision with a statement of reasons for choosing the particular sentence imposed. The record from Gibbs's revocation hearing reveals the district court's failure to comport with either procedural requirement. By affirming it, the majority opinion flies in the face of the plain and long-established precedent of both the Fourth Circuit and the Supreme Court.

## III.

The majority purports to apply our binding precedent, but in reality it undermines it. In its opinion, the majority claims that revocation sentences falling within the advised Guidelines range are "presumed reasonable." *Ante* at 9 (citing *Webb*, 738 F.3d at 642). This misconstrues the law. While within-Guidelines sentences may be presumed to be *substantively* reasonable, such a presumption does not apply to the *procedural* prong of the reasonableness analysis. *Blue*, 877 F.3d at 519–20; *see Gall*, 522 U.S. at 51 (permitting appellate courts to apply an optional presumption of reasonableness in their substantive analysis of within-Guidelines sentences). As we have explained before,

26

applying such a presumption would "effectively eliminate the requirement that sentencing courts adequately explain all sentences, even those within the Guidelines, and would be inconsistent with this Court's precedent." *Blue*, 877 F.3d at 520.

Moreover, a presumption of reasonableness makes little sense in the context of procedural review. The only reason we may presume that a sentence is substantively reasonable is because there are procedural safeguards in place at the time of sentencing, which assure us that the district court made a carefully reasoned and appropriately individualized decision. Robust procedural requirements—such as those instructing the sentencing court to fully address the parties' arguments and adequately explain its chosen sentence—are precisely what allow for a presumption of substantive reasonableness. To presume that a within-Guidelines sentence is *procedurally* sound is to turn the entire reasonableness analysis on its head.

Even more troubling is that, in searching for a rationale from the district court, the majority transposes its own reasoning where the district court's should be. *Ante* at 11–13. Analysis of a sentence's reasonableness proceeds under an abuse of discretion standard. *Gall,* 552 U.S. at 56. Thus, our task, contrary to what the majority opinion implies, is not to describe what *our* reasons would have been had *we* been the ones to sentence Gibbs to two years in prison. Rather, our responsibility is to determine whether the district court adequately explained *its* reasons for sentencing Gibbs, and, by extension, whether Gibbs was sentenced in a fair manner. The abuse of discretion standard underscores the critical need for a requirement of clear explanation from the district court. Such a requirement exists precisely so that we do not risk substituting our own reasoning for that of the

27

sentencing court, which is closer to the facts of the case and thus better able to fashion an appropriate sentence.

In light of the law of this Court, the majority opinion cannot justify the district court's failure to offer Gibbs an adequate explanation. While insisting that the record "amply" demonstrates the district court's consideration, *ante* at 3, the majority sets the bar absurdly low by asserting that two words and a brief pause are enough to provide a satisfactory acknowledgement of a defendant's arguments for a downward variance. Such a conclusion renders meaningless the requirement to explain a sentencing decision—a sentencing decision that, lest we forget, amounts to no less than the deprivation of the defendant's liberty.

IV.

At Gibbs's sentencing hearing, the district court gave no indication that it had considered Gibbs's time already served, nor his family's hardship, nor his completed work training, nor his cooperation with the Government's investigations in the Wilmington area—the bases of each of Gibbs's nonfrivolous mitigating arguments. The court also offered no explanation for imposing the particular sentence it chose. Nonetheless, the majority believes the district court fulfilled its congressionally mandated duty to adequately explain its sentence. As such, the majority predicates its decision on little more than its independent belief that Gibbs received the punishment he deserved. Such a position is not only an affront to over a decade of clearly established precedent

28

with regard to sentencing procedure, but also a transgression of our role as a reviewing court.

I respectfully dissent.